FREEMAN MATHIS & GARY, LLP
Robert A. Cutbirth – SBN 131279
RCutbirth@FMGLaw.com
Allen E. Sattler – SBN 321086
ASattler@FMGLaw.com
44 Montgomery Street, Suite 3580
San Francisco, CA 94104
Telephone: 415-352-6424

Attorneys for Plaintiff Certain Underwriters at Lloyd's, London

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. IME-0617NO-00431<br><br>Plaintiff,<br><br>v.<br><br>CHEF'D, INC,<br><br>Defendant. | Case No.<br><br>**COMPLAINT OF CERTAIN UNDERWRITERS AT LLOYD'S LONDON FOR DECLARATORY RELIEF** |

Plaintiff Certain Underwriters at Lloyd's of London (the "Underwriters") file this Complaint for Declaratory Relief against Defendant Chef'd, Inc. ("Chef'd"):

**NATURE OF THE ACTION AND AUTHORITY FOR RELIEF**

1. The Underwriters bring this action against the Defendants pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, in order to have the Court evaluate and determine the present and existing controversy between the parties as to:

- Whether the Underwriters must indemnify Chef'd under the terms and conditions of Policy Number IME-0617N0-00431 (the "Policy") in response to any final adverse judgment entered against Chef'd in Ingrid Zapata v. Chef'd, Inc., United States District Court for the Eastern District of New York, Case No. 1:18cv4398 (the "Action"); and
- Whether the Underwriters have satisfied any actual or potential duty related to the defense of Chef'd in the Action, assuming any such obligation ever arose in the first instance, or whether the Underwriters were excused or released from any and all such duties by their actions and inaction.

**PARTIES**

2. Plaintiff Underwriters at Lloyd's London Subscribing to Policy No. IME-0617N0-00431 is comprised of the Antares Managing Syndicate (Syndicate) 1274, and Barbican Syndicate 1955, the shareholding individuals or entities, managing agents, and principal places of business are in various locations outside of the States of California, Delaware, and New York.

3. Defendant Chef'd, Inc. is believed to be at all times relevant herein a corporation, duly formed and existing under the laws of the State of Delaware, with a principal place of business within the County of Los Angeles.

**VENUE AND JURISDICITON**

4. Venue properly lies in this Court and in this Division because at all times relevant to this action Chef'd principally conducted business within this District and this Division. Further, the Underwriters issued or delivered the Policy to Chef'd in this District and this Division.

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332. There is complete diversity of citizenship between the Underwriters and the Defendants, and the potential amount in controversy amount exceeds, $75,000, exclusive of interest and costs.

**FIRST CAUSE OF ACTION - DECLARATORY RELIEF**

**(DUTY TO DEFEND)**

6. The Underwriters incorporate by reference Paragraphs 1-6 above as though here set forth in full.

7. On April 23, 2018, Chef'd reported to Robert A. Cutbirth, Esq., the Underwriters' authorized representative for notifications of claims then with Tucker Ellis, LLP, a demand by third-party Ingrid Zapata for damages allegedly resulting from unlawful employment practices by Chef'd.

8. On April 26, 2018, Mr. Cutbirth acknowledged Ms. Zapata's claim under a full reservation of rights in anticipation of a claim investigation. At Chef'd's specific request, the Underwriters also later agreed that Chef'd could retain Mary A. Smith, Esq., of Jackson Lewis, P.C., as Chef'd's defense counsel in response to the claim for damages, recognizing that until Chef'd exhausted its $35,000 defense obligation in the payment of reasonable and necessary defense fees and costs, and/or in resolution of the claim, no obligations actually arose under the Policy.

9. The Underwriters thereafter made numerous attempts to coordinate the investigation and defense of the claim before the Action was filed. For instance, on May 1, 2018, Chef'd representatives and Mr. Cutbirth participated in an introductory call to discuss the claim and to establish a framework for the investigation. Chef'd thereafter failed to share substantive information, participate in the investigation and defense or otherwise respond to Mr. Cutbirth and his prior and current firms. This was initially in part due to the statement by one of Chef'd's former general counsel that he did not believe such a cooperation obligation initially existed, and that he expected to independently manage the defense of the claim. Counsel was advised that this approach was inconsistent with Chef'd's obligations under the Policy, even before the retention obligation was exceeded.

10. The failure of Chef'd thereafter to cooperate with the Underwriters and their representative impeded early resolution and/or settlement negotiations. For instance, on May 30, 2018, Mr. Cutbirth requested an update from Chef'd, particularly given the potential for an early mediation or settlement effort. Mr. Cutbirth did not receive a response from any representative of Chef'd.

11. On June 20, 2018, Mr. Cutbirth reiterated to Chef'd his need for an update and requested a call to discuss the matter further. Mr. Cutbirth did not receive a response from any representative of Chef'd, continuing a cone of silence that materially impaired and jeopardized the Underwriter's rights to both manage the claim and, potentially, to seek an early and cost-effective resolution.

12. On June 22, 2018, Mr. Cutbirth sent a further email to Chef'd representatives noting the lack of response to his prior emails. The email also contained a request by Mr. Cutbirth that Chef'd representatives provide a written summary of all actions taken and all communications exchanged over the last two months no later than that Monday, June 25, 2018. Mr. Cutbirth also expressly reserved all the Underwriters' rights.

13. Mr. Cutbirth received a response from Ms. Smith, and a brief conference call was held on June 29, 2018. The parties agreed to consider an early EEOC mediation, but nothing further apparently occurred in that regard, and no additional substantive information was provided.

14. On August 2, 2018, Ingrid Zapata filed the Action.

15. On August 6, 2018, attorney Smith advised Mr. Cutbirth of the existence of the filing, stating that she advised Zapata's counsel that she was not authorized to accept service of the Complaint.

Ms. Smith expressed concern that no one from Chef'd seemed to be responding, and she was unsure whether the prior former general counsel or anyone would be responding to her inquiries for guidance and information. The reported "new" general counsel for the company, Paul Vacquier, did not respond and appeared to have also been gone from the company. Other efforts to contact prior "contacts" within Chef'd also failed.

16. According to the court's docket in the Action, Chef'd was served on August 13, 2018 through substituted service on the New York Secretary of State, and its Answer was due on September 3, 2018. Chef'd did not provide notice of the commencement of the Action to the Underwriters or their representative; there is no indication that attorney Smith was ever advised of the substituted service, nor did attorney Smith ever again reach out to Mr. Cutbirth or any other representatives of the Underwriters. In fact, there were no outreach or affirmative efforts of contact by any Chef'd representatives, and the Underwriters were left without any knowledge or update on case or claim status, potential communications with Zapata or her counsel, or any other person at Chef'd who was in a position to assist in the defense and/or management of the claim..

17. According to the court's docket in the Action, on October 25, 2018, the clerk entered the default of Chef'd in the Action. Chef'd did not provide notice of the entry of a default to the Underwriters or their representative; in fact, there has been no communication what

18. According to the court's docket in the Action, on December 18, 2018, Ms. Zapata filed a motion for a default judgment against Chef'd in the Action. Absent subsequent pleadings, the Action will result in a judgment adverse to Chef'd, but there is nothing the Underwriters can reasonably do to stop such action given their absence of witnesses or substantive information to defend the case, or even develop a reasonable ability to set aside the default.

19. During the latter part of December 2018, as the Underwriters were preparing to close this matter due to an absence of then-understood action in the matter, Mr. Cutbirth discovered the filing of the Motion for Entry of Default Judgment.

20. Mr. Cutbirth and his staff, on the Underwriters' behalf, repeatedly attempted to telephone, email, and otherwise seek to contact any Chef'd representative, but received no response to any messages or attempts at communication. Efforts responded with "bounce-back" emails that individuals were gone,

telephone calls met with no success when no remaining "Chef'd" telephone number lead to any current or former Chef'd owner, director, or officer, and efforts to send emails and telephone calls to accounts and numbers believed to potentially be current for former corporate officials, all met with no response or confirmation of no existing account.

21. It appears that following an asset-only sale to a third party, all Chef'd representatives have been terminated/left the company, and/or are nonresponsive as to any inquiries for assistance or information that would be necessary from Chef'd in contacting witnesses, preparing them for defense activities, and have authorized agents to review, approve, and/or execute required pleadings. As such, any attempt by the Underwriters to further attempt to assist in the defense of this claim has been materially and necessarily impaired and prejudiced, with the entry of a default, due to the Insured's sole and separate negligence, leaving no ability of the Underwriters to properly manage the claim to what they initially believed and were told was a defensible case.

22. In addition, based on information and belief, the Insureds failed to pay the $35,000 retention obligation, negating any potential coverage, including a duty to defend, since the Policy has not yet been implicated or triggered.

23. Given the facts as set forth above, the Underwriters seek a determination that they owe no past, existing, or future defense obligation with respect to the claim or Action.

## SECOND CAUSE OF ACTION - DECLARATORY RELIEF

## (DUTY TO INDEMNIFY)

24. The Underwriters incorporate by reference Paragraphs 1-23 above, as though here set forth in full.

25. Because the Underwriters cannot presently defend the Action for the reasons noted above, and because they have been materially prejudiced in their attempt to provide a defense to the claim and/or manage the claim in a manner protecting all parties and their interests in keeping with their rights under the Policy and in keeping with governing legal standards, there appears to be no good faith and proper basis to hold the Underwriters liable for any obligation to indemnify Chef'd for any amount that may be rendered in Ms. Zapata's favor in the Action.

26. Consequently, the Underwriters seek a judicial determination that they complied with all obligations under the Policy, to the fullest extent possible under the circumstances, and that any potentially obligation to indemnify or pay any amounts under the Policy toward a settlement or judgment have been fully excused and barred.

**PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, and after expected efforts to serve this Complaint on former corporate officers of Chef's at their personal homes or residences, in the manner that may be allowed under the governing statutes, the Underwriters pray for relief as follows:

A. A judicial determination of the parties' respective rights and obligations on the issues described above, and specifically excluding any defense or indemnity obligations under the Policy for the reasons noted above; and

B. Any and all other relief as the Court may deem just and proper.

DATED: January 14, 2019

FREEMAN, MATHIS & GARY, LLP

By: ______________/S/_______________________
Robert A. Cutbirth, Esq./Allen E. Sattler, Esq.
Attorneys for Plaintiff
CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON